# EXHIBIT 11



**Landon T. Maxwell | Attorney**
D: (480) 626-1975
E: lmaxwell@consumerattorneys.com

September 5, 2024

**VIA USPS AND EMAIL**

Silverman Theologou
c/o Lafayette Federal Credit Union
11835 West Olympic Boulevard, Suite 855E
Los Angeles, CA 90064
info@silvermanlegal.com

**Re: Joshua Scott Miller**

Dear Sir or Madam:

Please be advised that our office has been retained to represent Joshua Scott Miller ("Mr. Miller") with respect to his claims against Lafayette Federal Credit Union ("Lafayette") for violating the automatic stay provided by bankruptcy law.

**I.　　BACKGROUND**

In or around February 2021, Mr. Miller applied for, and received, a personal loan from Lafayette. As collateral, Lafayette obtained a security interest in an inground pool at Mr. Miller's residence in Valley Springs, California (the "Property").

Having fallen on hard financial times, however, on April 20, 2023, Mr. Miller filed a no-asset Chapter 7 Bankruptcy in the U.S. Bankruptcy Court for the Eastern District of California, Petition No. 23-90171-E-7. [Exh. A]. Mr. Miller identified Lafayette as a creditor in his bankruptcy petition schedules, and the Bankruptcy Noticing Center ("BNC") promptly mailed a notice of the bankruptcy filing (and the resultant Automatic Stay) to Lafayette on or about April 26, 2023. [Exh. B].

The BNC Notice set forth, *inter alia*, that

[t]he filing of the [bankruptcy] case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

[*Id.*].

Despite having received notice of Mr. Miller's bankruptcy filing, however, on or about May 1, 2023, Lafayette filed a Form UCC1 Financing Statement (the "Financing Statement") (Document No. 2023-003115) with the Calaveras County Recorder's Office to perfect its security interest in the Property. [Exh. C]. On or about February 16, 2024, Mr. Miller's bankruptcy attorneys' mailed correspondence to Silverman Theologou requesting that Lafayette take immediate action to terminate the lien on Mr. Miller's Property, but never received a response. [Exh. D]. Lafayette did, however, thereafter apparently file a UCC1 Financing Statement Amendment terminating Lafayette's lien on the Property on or about February 21, 2024. [Exh. E]. For unknown reasons, Lafayette/Silverman Theologou did not provide Mr. Miller with a copy of the Amendment (or any other proof that the lien had been terminated) until March 26, 2024, despite repeated requests by both Mr. Miller and his bankruptcy attorneys prior thereto.

Lafayette has violated the Bankruptcy Court's Automatic Stay and is liable to Mr. Miller therefor.

## II. ANALYSIS.

A bankruptcy petition "operates as a stay" against, *inter alia*, "any act to create, perfect, or enforce any lien against property of the estate," and "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." 11 U.S.C. §§ 362(a)(4), (5); *see also Snavely v. Miller (In re Miller)*, 397 F.3d 726, 730-31 (9th Cir. 2006) ("The stay of section 362 is extremely broad in scope and … should apply to almost any type of formal or informal action against the debtor or property of the estate.").

Here, the Automatic Stay arose when Mr. Miller's bankruptcy petition was filed on April 20, 2023. Lafayette's subsequent filing of the Financing Statement clearly constituted an "act" to "create, perfect, or enforce" a lien that "arose before the commencement of" the bankruptcy in plain violation of the Bankruptcy Court's automatic stay. *See In re Brown*, No. A08-00235-DMD, 2008 Bankr. LEXIS 5141, at *7 (Bankr. D. Alaska Nov. 17, 2008) ("The [UCC] financing statement was recorded post-petition … [t]his recording was in violation of the automatic stay imposed by 11 U.S.C. § 362(a)(4)."); *In re Parker*, 644 B.R. 805, 825 (N.D. Cal. 2021) ("The automatic stay bars any act to perfect a lien to secure a claim that arose pre-petition against the property of the debtor."); *Ali v. Merch (In re Ali),* 2015 Bankr. LEXIS 2443, at *187 (Bankr. W.D. Tex. July 23, 2015) (holding that a creditor's post-petition filings of UCC financing statements constituted "violations of the automatic stay under 11 U.S.C. §§ 362(a)(4) & (5)").

A bankruptcy court, furthermore, may award damages against a stay violator if the violation was "willful." 11 U.S.C. § 362(k)(1). A "willful" violation

> does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

*Havelock v. Taxel (In re Pace),* 67 F.3d 187, 191 (9th Cir. 1995).

Lafayette violated the Automatic Stay after it received notice of the Automatic Stay on April 26, 2023. The violation, furthermore, stemmed from an unquestionably intentional act in that Lafayette intended to file the violative Financing Statement. Accordingly, Lafayette's liability for a "willful" violation of the Automatic Stay is not seriously in question.

As for the damages available to redress such a willful violation of the Automatic Stay, bankruptcy courts may award, *inter alia*: a) compensation for the debtor's emotional distress and other actual damages; and b) the debtor's costs and attorneys' fees incurred. 11 U.S.C. § 362(k)(1); *In re Dyer,* 322 F.3d 1178, 1189 (9th Cir. 2003); *Dawson v. Wash. Mut. Bank (In re Dawson)*, 390 F.3d 1139, 1151 (9th Cir. 2004). Furthermore, "even if the violation of the automatic stay was not egregious, the circumstances may make it obvious that a reasonable person would suffer significant emotional harm." *Id.,* at 1150 (citing to *United States v. Flynn (In re Flynn)*, 185 B.R. 89, 93 (S.D. Ga. 1995) (affirming $5,000 award of emotional distress damages, with no mention of corroborating testimony, because "it is clear that [debtor] suffered emotional harm" even though the stay violation was "brief and not egregious."

In this matter, Lafayette's violation of the Automatic Stay caused Mr. Miller to suffer significant harm. After Mr. Miller's bankruptcy case had closed, in or around January 2024, Mr. Miller and his spouse listed the Property for sale, as they intended to move to the East Coast in order to be closer to, and care for, aging family members. Mr. Miller began to receive strong interest from potential buyers almost immediately, including one such potential buyer who initiated a preliminary offer to buy the Property in cash at the listed asking price of $955,000. Unfortunately, however, when a title search was run on the Property, the sale fell apart due to the existence of Lafayette's lien on the Property. [Exh. F]. The presence of Lafayette's lien forced Mr. Miller to delay the sale of the Property until after Lafayette terminated the lien on or about February 21, 2024. While Mr. Miller was able to sell the Property in March 2024, it sold below asking price for $926,338.55. [Exh. G]. Furthermore, a condition of sale was that Mr. Miller be responsible for paying off the $15.869.99 remaining on the lease for the Property's solar power installation. [*Id.*]. Notably, this was not an anticipated condition of sale of the January 2024 cash offer. Therefore, due to Lafayette's violation of the Automatic Stay, Mr. Miller lost approximately $45,000 in profits for the sale of the Property.

Furthermore, Lafayette's violation of the Automatic Stay caused Mr. Miller (and his household) severe emotional distress. In addition to the financial harm, Mr. Miller suffered emotional pain and stress, as he was forced to delay the sale of the Property, and therefore the relocation of his family to the east coast. Part of the motivation for this move was to enable Mr. Miller's young son to meet his great grandfather, who was ninety-one years of age and in ailing health, for the first time. Mr. Miller feared that due to the delay in moving, his elderly relative would pass away before ever getting the chance to meet his great grandson in person, causing Mr. Miller great stress and sleepless nights. Due to Lafayette's violation, Mr. Miller had to put not only his life plans on hold, but also those of his spouse and child. As such, a substantial award for Mr. Torres's emotional distress alone is likely here.

Additionally, Mr. Torres has incurred substantial attorneys' fees to halt and redress Lafayette's violation of the Automatic Stay. A significant award is likely on that basis as well. *See*

*Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (B.A.P. 9th Cir. 1995) ("The words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorney's fees be mandatory upon a finding of a willful violation of the stay.").

### III.     SETTLEMENT OFFER

To avoid bringing this matter to the Bankruptcy Court, my client is willing to release his automatic stay claim in return for a payment of ▮▮▮▮▮▮▮▮ inclusive of all damages and attorneys' fees and costs incurred. This settlement offer will expire if not accepted in writing within 30 days from the date of this letter.

Thank you for your prompt attention to this matter.

                                            */s/ Landon T. Maxwell*
                                            Landon T. Maxwell
                                            Consumer Attorneys, PLC
                                            8095 N. 85th Way
                                            Scottsdale, AZ 85258
                                            P: 480-626-1975
                                            F: 718-715-1750
                                            E: lmaxwell@consumerattorneys.com

cc:     Jenna Dakroub, Esq.
          Joshua Scott Miller