12

Landon T. Maxwell, AZ #038439
**CONSUMER JUSTICE LAW FIRM PLC**
8095 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-1975
F: (480) 613-7733
E: lmaxwell@consumerjustice.com

Jenna Dakroub, CA #350170
**CONSUMER JUSTICE LAW FIRM PLC**
16130 Ventura Blvd., Suite 300
Encino, CA 91316
T: (602) 807-1525
F: (480) 613-7733
E: jdakroub@consumerjustice.com

*Attorneys for Debtor*
*Joshua Scott Miller*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# MODESTO DIVISION

| | |
|---|---|
| In re:<br><br>JOSHUA SCOTT MILLER<br><br>            Debtor, | Case No.: 23-90171-E<br>Docket Control: CJL-4<br><br>Chapter 7<br><br>Date: December 18, 2025<br>Time: 10:00 am. PST<br>Courtroom: Sacramento Division<br>501 I Street, 7th Floor. Courtroom 35<br>Sacramento, CA95814<br><br>Hon. Christopher M. Klein |

## DEBTOR'S REPLY IN SUPPORT OF DEBTOR'S POST ORDER MOTION FOR ATTORNEY'S FEES AND COSTS

Now comes Debtor Joshua Scott Miller, by and through his Attorneys, Consumer Justice Law Firm PLC, and hereby submits this Reply in Support of his Post-Order Motion for Attorney's

Fees and Costs [doc. 93] ("Motion"), and in response to Creditor Lafayette Federal Credit Union's ("LFCU") Opposition [doc. 98] to the same:

I.       **INTRODUCTION**

From the moment LFCU violated the Automatic Stay, it has tried desperately to avoid any and all responsibility for its violative conduct. LFCU first ignored a good-faith attempt by Debtor's then-bankruptcy counsel, Resolve Law Group, to redress the violation in February of 2024. Accordingly, Debtor then retained the undersigned counsel as litigation counsel, as Resolve is not in the primary business of pursuing such violations. LFCU then predictably ignored a similar attempt by the undersigned counsel to resolve the matter informally in September of 2024. As a result, Debtor was left with no recourse but to bring the matter to this Court and continue litigation through to its eventual end – this Court's Order finding LFCU liable and awarding damages to Debtor (the "Order") [doc. 82]. Throughout the litigation process, LFCU still refused to engage in good-faith settlement discussions, insisting that it had no liability and only re-extending the same *de minimis* offer over and over. And yet, in the Opposition, LFCU attempts to gaslight this Court into believing that the length and extensiveness of the litigation was solely the fault of Debtor. In reality, Debtor and Debtor's counsel bent over backwards to try and resolve the matter without the Court's involvement, but was unable to solely due to LFCU's – not Debtor's – stubbornness. LFCU further attempts to argue that the bulk of the fees claimed were caused by Debtor's counsel's own ineptitude. This is demonstrably false, as discussed in more detail below. In fact, none of the Opposition's arguments hold water, but are simply the latest in a series of attempts to eschew responsibility for its own conduct and avoid compensating Debtor fairly.

//

## II. LEGAL STANDARD

Compensation in bankruptcy matters is governed by 11 U.S.C. § 330(a)(3) and (4) which provide as follows:

> (3) In determining the amount of reasonable compensation to be awarded … the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
>     (A) the time spent on such services;
>
>     (B) the rates charged for such services;
>
>     (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
>     (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
>     (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
>     (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>
> (4)(A) Except as provided in subparagraph (B), the court shall now allow compensation for –
>
>     (i) unnecessary duplication of services; or
>
>     (ii) services that were not –
>
>         (I)    reasonably likely to benefit the debtor's estate; or
>         (II)   necessary to the administration of the case.

The customary method for assessing an attorney's fee application in bankruptcy is the "lodestar," under which "the number of hours reasonably expended" is multiplied by "a reasonable hourly rate" for the person providing the services. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir. 1991). However, the lodestar method is not mandatory. *See In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 856 (3d Cir. 1994) ("While bankruptcy fees are commonly

calculated using the lodestar method, . . . § 330 by no means ossifies the lodestar approach as the point of departure in fee determinations.").

### III. ARGUMENT

#### A. Time Spent Prosecuting LFCU's Violation is Recoverable

The Opposition boldly asserts that the undersigned counsel did not have "any involvement with bringing about an end to the stay violation." Opposition, pg. 3. From LFCU's perspective, the violation was "resolved with the filing terminating LFCU's lien on the Property" and that therefore, the "fees claimed have no relation to any work remedying the violation." *Id.* LFCU's proposition that the violation was resolved the date the lien termination paperwork was filed is, quite frankly, preposterous.

This Court's *own* Order clearly explains that "attorney's fees include prosecution of an action seeking recovery relating to violation of the automatic stay, not merely attorney's fees in having the violation of the automatic stay corrected." Order, pg. 11; *see also In re Sorelle*, Nos. BK-S-19-17870-MKN, BK-S-19-17871-MKN, BK-S-19-17872-MKN, 2020 Bankr. LEXIS 3612 (Bankr. D. Nev. Dec. 28, 2020) ("Attorney's fees recoverable under Section 362(k)(1) encompass the amounts incurred in preventing a continued violation **as well as the amounts incurred in seeking sanctions**.") (emphasis added); *America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard),* 803 F.3d 1095, 1099 (9th Cir. 2015) ("Did Congress intent to authorize recovery of attorney's fees incurred in litigation for one purpose (ending the stay violation) but not for another (recovering damages)? We see nothing in the statute that suggests Congress intended to cleave litigation-related fees into two categories, one recoverable by the debtor, the other not. The statute says 'including costs and attorneys' fees,' **with no limitation on the remedy for which the fees were incurred**.") (emphasis added*).* This is for important reason:

Congress undoubtedly knew that unless debtors could recover the attorney's fees they incurred in prosecuting an action for damages, many would lack the means or financial incentive (or both) to pursue such actions. After all, the very class of plaintiffs authorized to sue – individual debtors in bankruptcy – by definition will not typically have the resources to hire private counsel. And in many cases the actual damages suffered by the injured debtor will be too small to justify the expense of litigation, even if the debtor can afford to hire counsel. *See* Brief for National Association of Consumer Bankruptcy Attorneys as Amicus Curiae at 22. **Thus, Congress could not have expected § 362(k) to serve as an effective deterrent unless it authorized recovery of the attorney's fees incurred in prosecuting an action for damages.** In that respect, § 362(k) is no different from the many statutes Congress has enacted 'making it possible for persons without means to bring suit to vindicate their rights.' *Perdue v. Kenny A.,* 559 U.S. 542, 559, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010).

*America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard),* 803 F.3d 1095, 1100 (9th Cir. 2015) (emphasis added). Here, this Court found that Debtor's "emotional distress is directly linked to Lafayette's violation." Order, pg. 13. Thus, the reasonable attorneys' fees Debtor incurred in seeking sanctions are clearly recoverable.

### B. Debtor's Counsel Excluded Time Billed for So-Called Procedural Errors

Next, LFCU vaguely argues that "most of" the claimed fees were caused by the undersigned counsel's procedural errors. As LFCU did not identify any specific entries it claims are duplicative, inefficient, or otherwise not recoverable, Debtor's counsel is left in the dark as to what LFCU contests specifically. However, Debtor's counsel assumes LFCU is attempting to argue that Debtor's counsel should not be compensated for the drafting of all three of docs. 34, 50, and 63. Debtor's counsel agrees.

Doc. 34, Debtor's initial Motion for Contempt filed on March 24, 2025, was withdrawn by Debtor's counsel [doc. 53] due to an error related to counsel's firm's name in the filing. The Motion for Contempt was refiled as doc. 50, which in turn was denied without prejudice on May 2, 2025. [doc. 62]. Thereafter, Debtor filed the operative Motion for Contempt [doc. 63], which was, of course, ultimately successful.

Debtor's counsel has not, and does not, made any claim for fees related to the drafting and filing of docs. 34, 50, and/or 53. Nowhere in Exhibit 1 to Debtor's Motion [doc. 87], does Debtor's counsel seek fees related to time spent on such matters/filings. There is simply no corresponding time entry whatsoever related to the drafting, filing or withdrawal of doc. 34. Similarly, there is no corresponding entry related to the drafting or filing of doc. 50, nor for anything related to reviewing doc. 62. The *first* time entry related to the drafting/filing of any motion for contempt is found on June 6, 2025 – well after this Court's May 2025 Order denying doc. 50. All of the entries preceding June 6, 2025 exclusively concerned: 1) Initial claim review; 2) Correspondence with Debtor; 3) Correspondence with opposing counsel (both pre- and post-litigation); 4) Legal research specific to Debtor's claim against LFCU; and 5) entries related to the initial re-opening of Debtor's bankruptcy case. Notably, none LFCU's line-item objections identify any specific entries as supposedly being duplicative, calling into question the sincerity of this allegation.

As explained in more detail below, all of these entries are recoverable and related to the prosecution of Debtor's claim against LFCU. None are duplicative. In fact, the *very last* time entry is dated August 7, 2025. In other words, despite presumptively being entitled to do so, Debtor's counsel is not even attempting to claim fees relating to the drafting/litigation of the Motion, this Reply, or anything else related to the contested fee hearing currently scheduled for December 18, 2025. Similarly, Debtor's counsel is not attempting to claim fees related to the second re-opening of Debtor's case. [doc. 90]. Debtor's counsel understands that the Court may, of course, reduce the attorneys' fees and costs awarded as it sees fit, but LFCU's allegation that the undersigned counsel is attempting to recover fees for duplicative work is patently false.

//

### C. The Claimed Costs are Recoverable

LFCU next seemingly attempts to claim that the undersigned counsel's Pro Hac Vice application fee is an "administrative or voluntary licensing fee." As exclusive support, LFCU cites a 2005 case contemplating what fees should be owed to an attorney who was employed by the U.S. Trustee assigned to the bankruptcy case in assisting the Trustee in his/her statutory duties during the bankruptcy case proceedings. The court held that the attorney was not entitled to fees for the services it performed, as those services were the trustee's responsibilities pursuant to 11 U.S.C. § 704, and the attorney's fee application did not sufficiently prove that the case was complex enough to warrant the trustee's retention of counsel. In other words, a scenario bearing no relevance whatsoever to the present matter.

To clarify, Debtor's Counsel is seeking $300 in costs – not $600 – and such amount is entirely comprised by the filing fee for the undersigned counsel's Pro Hac Vice application. A receipt for the $300 filing fee is attached hereto as Exhibit 3. Pro Hac admission was necessary for the undersigned counsel to appear before this Court and prosecute LFCU's violation. The filing fee was necessary to obtain this Court's permission for the undersigned counsel to appear Pro Hac Vice.

### D. Line-Item Objections

The Opposition seemingly does not contest the reasonableness of the rates charged by the undersigned counsel.[1] Given that, LFCU's specific line-item objections will now be addressed.

---

[1] *See In re Walker*, No. 22-31612 JDA, 2024 Bankr. LEXIS 2125, at *8-10 (Bankr. E.D. Mich. Sep. 12, 2024) *(*"[A]re the hourly rates charged by Consumer Attorneys [Consumer Attorneys being the prior name of the undersigned counsel's firm, now named Consumer Justice Law Firm] in this case "reasonable?" The Court finds that they are …. And while it is true that certain of these hourly rates would be high for the representation of a debtor in a consumer bankruptcy case, the matter before this Court is a civil contempt matter regarding damages incurred by Debtor as a result of a willful violation of the discharge injunction …. This Court has previously approved

*i. Pre-litigation & Client Intake; Settlement correspondence.*

LFCU here argues – without citing to any authority – that "[v]oluntary negotiations are not necessary to remedy the stay violation and therefore not recoverable." Opposition, pg. 5. Yet earlier in the Opposition, LFCU lambasted the undersigned counsel for unnecessarily pursuing the case to the point of having to attend "multiple hearings" and file "supplemental briefs." LFCU is essentially arguing that Debtor's counsel should not be awarded fees for formally litigating Debtor's claim, while in the same breath claiming that efforts to avoid litigation – encompassing pre-litigation correspondence and settlement negotiations – are *also* not recoverable, being "voluntary."

In the Ninth Circuit, "[i]n deciding the appropriate amount of attorney's fees to award as a sanction for a discharge violation, the Court must determine 'what portion of those costs was reasonable as opposed to costs that could have been mitigated." (*In re Cowan,* 586 B.R. 337, 346 n.10 (Bankr. D. Idaho 2018) (quoting *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 12 (9th Cir. BAP 2002). The time entries LFCU is contesting as excessive or unnecessary, are the exact same ones related to the undersigned counsel's attempts to mitigate the inevitable further accruement of attorney's fees related to formal litigation. If LFCU's position is to be taken seriously, then no counsel representing a debtor with an alleged automatic stay/discharge injunction violation claim should ever attempt to resolve the matter with the creditor directly, but immediately file an action in court, and, furthermore, should thereafter never attempt to discuss

---

rates as high as $800 per hour for debtor's counsel in business cases, and other judges in this District have approved rates exceeding $1,000 per hour. The Court is well-aware that such rates or higher are being charged to business creditors by their bankruptcy counsel. By this measure, and after the reductions in hours charged discussed below, the Court finds that the hourly rates charged in this case are reasonable."

settlement with opposing counsel. Such a stance is inherently flawed and severely undermines the concerns of judicial efficiency.

Debtor's pre-litigation correspondence asserting a claim [doc. 48] and all subsequent settlement discussions with opposing counsel – both prior to and after the filing of the operative Motion for Contempt [doc. 63] – were clearly related to the prosecution of Debtor's claim against LFCU. The Opposition claims that time entries related to "Pre-litigation & Client Intake" are "unrelated" to Debtor's case against LFCU because they "[o]curred before any stay violation finding." Opposition, pg. 4. This is nonsensical. Under this logic, *all* time spent by *any* debtor's attorney prior to a final ruling on liability would be "unrelated" and therefore not recoverable.

    ii. *Generic or duplicative legal research.*

Here, LFCU asserts that billing for generalized research not specifically tied to the contempt issues should be disallowed, yet stops short of identifying any specific time entries that were supposedly "generalized" or *not* specifically tied to the issues in Debtor's claim against LFCU. Exhibit 1, however, details with specificity what was being researched. Such contested entries are comprised of:

- 02/28/24 – Legal Research re: 9th Circuit caselaw perfecting security liens/auto[matic] stay violations;
- 08/28/24 – Legal Research re: 9th Circuit caselaw re: creditor's affirmative duties/punitive damages;
- 9/30/24 – researched 9th Circuit case law re: valid notice [in response to caselaw cites provided by opposing counsel concerning the issue of effective notice of a bankruptcy filing/discharge on a creditor].

Exhibit 1. Each of the above entries clearly relate to Debtor's specific claim against FCU: 1) that taking action to perfect a lien is a violation of the automatic stay; 2) that creditors have affirmative duties/obligations upon receiving notice of a bankruptcy violation; and 3) what constitutes effective notice of a bankruptcy filing/discharge.

### iii. Motion to Reopen.

LFCU next asserts that nothing related to Debtor's Motion to Reopen [doc. 30] is recoverable as "[r]eopening was procedural and not shown to be caused by the creditor's misconduct." Opposition, pg. 5. The undersigned counsel does not have to explain to this Court that a closed bankruptcy case *must* be reopened before a motion for contempt, or other application for relief, can be filed, in accordance with 11 U.S.C. § 350(b). The only way for Debtor to pursue his claim against LFCU, given that informal attempts at resolution failed, was by virtue of the filing of the Motion for Contempt, which necessarily requires the reopening of Debtor's bankruptcy case.

### iv. Excessive time drafting contempt motion (June-July 2025).

Debtor's counsel is not in the business of filing generic motions on behalf of its clients, but carefully crafts appropriately personalized pleadings – in this case a motion for contempt – that account for district/circuit specific law and the precise facts at issue:

> Movants' second objection relates to the amount of time it took Consumer [Justice Law Firm], 10.3 hours, to file its Motion for Contempt, suggesting that such a task should take no more than four hours. This Court disagrees. Consumer [Justice Law Firm] was required to become familiar with the case and with the specific issue at hand. Under these circumstances, 10.3 hours on that task is reasonable, especially because the great majority of time was billed at Mr. Maxwell's hourly rate [of $350 hourly].

*In re Walker*, No. 22-31612 JDA, 2024 Bankr. LEXIS 2125, at *10 (Bankr. E.D. Mich. Sep. 12, 2024). In *Walker*, the Court ultimately awarded $12,348.50 in attorneys' fees and costs for ~ 25.8 hours billed to the undersigned counsel, Mr. Maxwell, and incurred in the prosecution of an automatic stay violation similar to the present matter. The undersigned counsel does not bring up the *Walker* matter to say that if significant fees were awarded there, they must too be awarded here. Rather, to illustrate the underlying point that an analysis of reasonable time billed must look at the work done in that specific case, and that it is improper to reduce a fee award

simply because "comparable cases" have – according to LFCU – supposedly been reduced to 5-6 hours. The undersigned counsel spent the necessary time researching and drafting a motion that made the best possible case for his client, and the end product was a motion that was ultimately successful in establishing LFCU's liability and Debtor's damages.

## IV. CONCLUSION

For the foregoing reasons, Debtor respectfully requests that the Court award Debtor's reasonable attorney's fees and costs in the amount of $10,900.00 in attorney's fees and $300.00 in costs.

Dated: December 10, 2025

/s/Landon T. Maxwell
Landon T. Maxwell, AZ #038439
CONSUMER JUSTICE LAW FIRM PLC
8095 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-1975
F: (480) 613-7733
E: lmaxwell@consumerjustice.com

Jenna Dakroub, CA # 350170
**CONSUMER JUSTICE LAW FIRM PLC**
16130 Ventura Blvd., Suite 300
Encino, CA 91316
T: (602) 807-1525
F: (480) 613-7733
E: jdakroub@consumerjustice.com

*Attorneys for Debtor*
*Joshua Scott Miller*

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

*/s/ Mari Cervantes*